**Douglas Kowal LINDBERGH**

v.

**TRANSWORLD SYSTEMS, INC.**

Civ. No. 3:93–1843 (JAC).

United States District Court,
D. Connecticut.

Feb. 9, 1994.

Marc M. Schindelman, Hartford, CT, for plaintiff.

Robert W. Allen, Tyler Cooper & Alcorn, New Haven, CT, for defendant.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, Chief Judge:

This action is brought pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), and parallel provisions of Connecticut state law. Pending before the court are the plaintiff's Motion for Summary Judgment as to the Issue of Liability Alone (filed Dec. 16, 1993) ("Plaintiff's Motion"), and the defendant's Cross Motion for Summary Judgment (filed Jan. 6, 1994).

### BACKGROUND

A review of the record reveals the following facts. The plaintiff, Douglas Kowal Lindbergh, allegedly incurred a debt in the approximate amount of $1,559.00 to Dr. Walter J. Leckowicz for services rendered in December 1982.[1] As recently as March 30 or March 31, 1993, however, the plaintiff, pursuant to an appointment he himself made, visited the office of Dr. Leckowicz for a consultation.[2]

Dr. Leckowicz had an agreement with the defendant Transworld Systems, Inc., a debt collector under the FDCPA, whereby—upon receipt of a transmittal form—the defendant would commence collection efforts regarding any debts assertedly owed to Dr. Leckowicz by any of his patients.[3] That agreement instructed Dr. Leckowicz that no transmit-

---

**1.** *See* Plaintiff's Statement of Material Facts (attached to Plaintiff's Motion), ¶ 1; Affidavit of Douglas Kowal Lindbergh (filed Dec. 16, 1993) ("Lindbergh Aff."), ¶ 3.

**2.** *See* Lindbergh Aff. ¶ 4; Plaintiff's Responses to Defendant's First Set of Interrogatories 3–5 (at-

tached to Defendant's Memorandum, filed Jan. 6, 1993).

**3.** *See* Affidavit of George Macauley (filed Jan. 6, 1993) ("Macauley Aff."), ¶ 2.

tals should be forwarded to the defendant which "involved bankrupt accounts or accounts which are beyond twelve (12) months from date of last payment or charge."[4] The agreement further instructed Dr. Leckowicz to provide on the transmittal form the date of the patient's last payment or charge.[5]

In May 1993, the defendant received from Dr. Leckowicz a transmittal form regarding the plaintiff's alleged debt which indicated that March 31, 1993 was the date of the plaintiff's last payment or charge.[6] Shortly thereafter, also in May 1993, the defendant commenced efforts to collect the plaintiff's debt. Its first communication with the plaintiff contained the notice required by 15 U.S.C. § 1692g.[7] The plaintiff did not respond to this letter, and in May and June 1993, the defendant followed up on its collection efforts with four more letters to the plaintiff.[8]

At least one of the letters sent to the plaintiff by the defendant had a bold blue stripe across the front of the envelope, upon which was printed in white letters the word "TRANSMITTAL."[9] This envelope also bore a return address of Santa Rosa, California.[10]

The defendant maintains regional offices in Rocky Hill, Connecticut and Woburn, Massachusetts, both of which are licensed as consumer collection agencies in the state of Connecticut.[11] The defendant's principal place of business is in Rohnert Park, California. Apparently, however, the California office is not licensed by Connecticut's Banking Commissioner.[12]

The plaintiff believes that all of the correspondence sent to him by the defendant originated from its California office.[13] In any event, all but one of the letters sent to the plaintiff by the defendant set forth the address of the defendant's office in Rocky Hill, Connecticut.[14]

On or about July 17, 1993, the plaintiff sent a letter to the defendant, asserting that the collection of the alleged debt—which dated from 1982—was barred by the Connecticut statute of limitations, Conn.Gen.Stat. § 52–576.[15] In this letter, the plaintiff further asserted that the defendant was in violation of the FDCPA and demanded $1,500 to avoid a lawsuit. Upon receipt of this letter, the defendant, in accordance with its normal practice when it learns that a debt is disput-

---

**4.** *See id.* ¶ 3, Ex. A.

**5.** *See id.* ¶ 4, Ex. A.

**6.** *See id.* ¶ 5, Ex. B.

**7.** *See id.* ¶ 6, Ex. C; Lindbergh Aff. ¶ 6, Ex. A5. Section 1692g(a) provides, in pertinent part, that [w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing
(1) the amount of the debt;
(2) the name of the creditor to whom the debt is owed;
(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt ... and a copy of such verification ... will be mailed to the consumer by the debt collector; ....

The plaintiff nowhere disputes that the defendant complied with the terms of this provision.

**8.** *See* Macauley Aff. ¶ 6, 7; Ex. D–G; Lindbergh Aff. ¶ 6, Ex. A1–A4.

**9.** *See* Lindbergh Aff. ¶ 8, Ex. B.

**10.** *See id.*

**11.** *See* Macauley Aff. ¶ 12; Lindbergh Aff. ¶ 9.

**12.** *See* Lindbergh Aff. ¶¶ 9, 10; *see also* note 28, *infra,* and accompanying text.

**13.** *See* Plaintiff's second Statement of Material Facts (dated Jan. 28, 1993), ¶ 4.

**14.** *See* Macauley Aff., Ex. C, D, F, G (which list the Rocky Hill address); *but see id.,* Ex. E (which lists only the California address).

**15.** *See* Macauley Aff. ¶ 8, Ex. H. Conn.Gen.Stat. § 52–576 provides, in relevant part, that "[n]o action for an account, or on any simple or implied contract, or any contract in writing, shall be brought but within six years after the right of action accrues...."

ed, ceased its collection activities, which have not been resumed to date.[16]

On September 13, 1993, the plaintiff commenced this action, alleging violations of 15 U.S.C. §§ 1692c,[17] 1692e,[18] and 1692f,[19] and parallel provisions of state law. Both parties have moved for summary judgment.

## DISCUSSION

### I.

■ Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986) (Feinberg, C.J.), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of mate-

rial fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Finally, "'mere conclusory allegations or denials'" in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978)).

### II.

### A.

■ In support of his motion for summary judgment, the plaintiff first claims that the defendant has violated 15 U.S.C. §§ 1692e(2)(A) and 1692f[20] by attempting to collect a debt barred by the state statute.of limitations, Conn.Gen.Stat. § 52–576.[21] The plaintiff's argument, however, is devoid of merit.

In *Hubbard v. National Bond & Collection Associates*, 126 B.R. 422 (D.Del.), *aff'd without opinion*, 947 F.2d 935 (3d Cir.1991), the bankruptcy court held that the plain language of Section 1692e "was intended to prohibit only knowing or intentional misrepresentations by debt collectors," and that this interpretation was "consistent with the FDCPA's purpose and structure." *Id.* at 427; *see also Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1032 (6th Cir.1992) (holding that an unintentional, bona fide error did not give rise to a violation of the FDCPA); 15 U.S.C. § 1692k(c) (providing that "[a] debt collector may not be held liable ... if [it] shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwith-

---

16. *See* Macauley Aff. ¶¶ 9–11.

17. Section 1692c prohibits certain types of communications between a debt collector and a debtor or a third party.

18. Section 1692e provides, in pertinent part, that [a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

....
 (2) The false representation of—
 ·  (A) the character, amount, or legal status of any debt....

19. Section 1692f further provides, in pertinent part, that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

20. *See* notes 18 and 19, *supra.*

21. *See* note 15, *supra.*

standing the maintenance of procedures reasonably adapted to avoid such error").

In *Hubbard,* the court also rejected the proposition that a debt collector must investigate the background of the debt prior to communicating with the debtor as "contrary to the intent of Congress and the purpose behind § 1692g of the FDCPA." *Id.* at 427–28.[22] The court emphasized the process of communication and verification prescribed by Section 1692g, through which

> the debt collector learns whether the debt is contested and the reasons, if any, for the debtor's refusal to pay. The statutory scheme of the FDCPA thus allows debt collectors to avoid the costs of investigating a debtor's background and ensures a cost effective means by which a debtor and debt collector can exchange information.

*Id.* at 428. The court highlighted two important functions of the exchange of information provided for by Section 1692g. First, it ensures that "debt collectors receive relevant factual information concerning debtors so that unnecessary contacts between debt collectors and debtors can be minimized." *Id.* Second, it

> provides debt collectors with "actual knowledge" of the facts relevant to their collection efforts. This is significant because only a knowing violation of § 1692e is actionable.... Therefore, under § 1692g, the debtor bears the responsibility to notify the debt collector of facts which the debt collector would not otherwise be aware.

*Id.*

Under the circumstances presented here, the court finds that there is simply no genuine issue of material fact that remains for trial. The plaintiff has nowhere alleged that the defendant failed to comply with the requirements of Section 1692g. Indeed, the record demonstrates the contrary. In addition, the plaintiff has produced no specific evidence even remotely suggesting that the defendant actually knew or should have known that the collection of the plaintiff's

debt was time-barred. Furthermore, the plaintiff has not offered any explanation as to why he did not dispute his debt and demand verification in the manner envisaged by Section 1692g or why the defendant should not have assumed that the debt was valid by dint of the plaintiff's failure to respond in a timely fashion to its first communication. Moreover, the plaintiff nowhere contests the defendant's assertion that—as soon as it received actual notice of the nature and circumstances of the plaintiff's debt—it ceased its collection activities.

On this record, the court can only wonder why the plaintiff has chosen to impose the significant burden of litigation on both the defendant and this court, instead of simply following the cost-effective procedures provided by the FDCPA specifically designed to facilitate the exchange of information between debt collectors and debtors. Put simply, the plaintiff's position ignores the importance of Section 1692g—which serves to obviate the need for litigation except where a debt collector has behaved knowingly, or at least recklessly, in violation of the statute.

In sum, under the circumstances presented here, the court finds that the plaintiff's conclusory and unsubstantiated allegations do not suffice to create a genuine issue of material fact as to whether the defendant intentionally or knowingly made any false, deceptive, or misleading representations to the plaintiff.[23] Nor is there sufficient evidence on this record to raise a genuine issue of material fact as to whether the defendant made any improper communications with the debtor or a third party,[24] or whether the defendant engaged in any unfair or unconscionable debt collection practices.[25]

Accordingly, with regard to the plaintiff's claims under 15 U.S.C. §§ 1692c, 1692e(2)(A), and 1692f, the plaintiff's motion for summary judgment must be denied and the defendant's cross-motion for summary judgment must be granted.

---

**22.** *See* 15 U.S.C. § 1692g; note 7, *supra.*

**23.** *See* 15 U.S.C. § 1692e; note 18, *supra.*

**24.** *See* 15 U.S.C. § 1692c; note 17, *supra.*

**25.** *See* 15 U.S.C. § 1692f; note 19, *supra.*

### B.

■ The plaintiff next claims that the defendant has violated Section 1692f(8) [26] by using a symbol [27] on at least one envelope in its efforts to collect the plaintiff's debt. Again, this claim is without merit. The plaintiff has cited no case law to support his position that Section 1692f(8) was designed to prevent the symbol at issue here. His argument that the court should decline to follow the holding of the one case which appears to be on point—*Masuda v. Thomas Richards & Co.*, 759 F.Supp. 1456 (C.D.Cal.1991)—is therefore entirely unpersuasive.

In *Masuda*, the court drew a distinction between "benign language" on the one hand, and "'symbols on envelopes indicating that the contents pertain to debt collection'" on the other. *Id.* at 1466 (*quoting* S.Rep. No. 95–382, 95th Cong., 1st Sess., at 2–4, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1696–98). This distinction also conforms with the Federal Trade Commission Official Staff Commentary on the FDCPA. "The legislative purpose [of § 1692f(8)] was to prohibit a debt collector from using symbols or language on envelopes that would reveal that the contents pertain to debt collection— not to totally bar the use of harmless words or symbols on an envelope." *See* 53 Fed. Reg. 50097, 50099 (Dec. 13, 1988).

Here, there is absolutely no evidence to suggest that there is a genuine issue of material fact that remains for trial. The plaintiff has nowhere alleged that the symbol at issue here pertains to debt collection in any way. Nor has the plaintiff suggested, much less shown, how his mechanical interpretation of Section 1692f(8)—which finds no support in either the case law, the legislative history, or the governing administrative agency construction—comports with the structure or purpose of the FDCPA.

Accordingly, with regard to the plaintiff's claim under 15 U.S.C. § 1692f(8), the plaintiff's motion for summary judgment must be denied and the defendant's cross-motion for summary judgment must be granted.

### C.

■ The plaintiff—relying on *Gaetano v. Payco of Wisconsin, Inc.*, 774 F.Supp. 1404 (D.Conn.1990)—further claims that the defendant has breached the FDCPA by failing to license its California place of business with the Connecticut Banking Commissioner in violation of Conn.Gen.Stat. § 42–127a(c). [28] Again, this argument is completely lacking in merit.

In *Gaetano*, the debt collector was not licensed to do business in Connecticut. The court therefore held that the debt collector violated the FDCPA because it misrepresented that it was authorized to collect the plaintiff's debt when, in fact, it could not do so without a state license. 774 F.Supp. at 1414–15. The court further held that the defendant's unlicensed activities violated the FDCPA by "depriv[ing] the plaintiff of her right as a consumer debtor residing within the state to have defendant's qualifications as a collection agency reviewed by state authorities." *Id.* at 1415 n. 8.

Here, by sharp contrast, the defendant is licensed as a collection agency in the state of Connecticut. The defendant is therefore authorized to collect debts in this state and the defendant's practices have been reviewed by the appropriate state authorities. The plain-

---

**26.** Section 1692f(8) includes as a prohibited debt collection practice "[u]sing any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram...."

**27.** *See* note 9, *supra*, and accompanying text. To reiterate, this symbol consisted merely of a blue stripe and the word "TRANSMITTAL."

**28.** Part of the Connecticut Consumer Collection Agency Act ("CCAA"), Conn.Gen.Stat. § 42–127a(c) provides, in relevant part, that "[n]o person, partnership, association or corporation licensed to act within this state as a consumer collection agency shall do so under any other name or at any other place of business than that named in the license." In *Gaetano*, 774 F.Supp. at 1414, the court, relying on *Wagner v. American Nat'l Educ. Corp.*, Civil Action No. N–81–541 (PCD) (D.Conn. Dec. 30, 1983), noted that there is no private right of action under the CCAA. The court therefore assessed the debtor's claim solely in the context of the FDCPA. In other words, the question presented was whether the debt collector's unlicensed activities—*regardless* of whether they constituted a violation of the CCAA—constituted a violation of the FDCPA.

tiff nowhere disputes this. Nor does he dispute that he was given ample notice of the fact that the defendant maintained a local office in Rocky Hill, Connecticut. He argues merely that the defendant's failure to obtain a Connecticut license for its California place of business constitutes a violation of the FDCPA since correspondence to the plaintiff was mailed from that place of business. This argument, however, reflects a false, narrow, and overly mechanical reading of the FDCPA.

Put simply, the mere fact that certain letters were mailed to the plaintiff from the defendant's California address—standing alone—does not suffice to raise an issue of material fact as to whether the defendant violated the FDCPA. Assuming *arguendo* that the defendant has violated Conn.Gen. Stat. § 42–127a(c), the plaintiff has nevertheless failed to set forth a viable claim under the FDCPA. Any remedy he may have therefore lies with the state Banking Commissioner, not with this court.[29]

Accordingly, with regard to the plaintiff's claim under the CCAA, the plaintiff's motion for summary judgment must be denied, and the defendant's cross-motion for summary judgment must be granted.

### D.

Finally, the plaintiff asserts a claim pursuant to the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. 42–110a *et seq.* ("CUTPA"). The plaintiff concedes, however, that the fate of the plaintiff's CUTPA claim rests exclusively on the fate of his FDCPA claim—claiming merely that a violation of the FDCPA also constitutes a violation of CUTPA.[30] Inasmuch as the court has already found that the plaintiff's cause of action under the FDCPA must clearly fail, he cannot sustain a viable claim under CUTPA.

Accordingly, with regard to the plaintiff's CUTPA claim, summary judgment must enter in favor of the defendant.

**29.** *See Gaetano,* 774 F.Supp. at 1414; *see also* note 28, *supra.*

### CONCLUSION

Based upon a full review of the record, and for the reasons stated above, it is hereby ORDERED that:

1. The plaintiff's Motion for Summary Judgment as to the Issue of Liability Alone (filed Dec. 16, 1993) (doc. # 6) is hereby DENIED.

2. The defendant's Cross Motion for Summary Judgment (filed Jan. 6, 1994) (doc. # 12) is hereby GRANTED.

3. Accordingly, judgment shall enter against the plaintiff and in favor of the defendant. The Clerk shall CLOSE this case.

It is so ordered.

**30.** *See* Plaintiff's Memorandum (filed Dec. 16, 1993), at 6.