In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 18-3119

NEAL PRESTON, individually and on
behalf of a nationwide class of
similarly situated individuals,

*Plaintiff-Appellant*,

*v.*

MIDLAND CREDIT MANAGEMENT, INC.,

*Defendant-Appellee*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-cv-01532 — **Sara L. Ellis**, *Judge*.

———————————

ARGUED MAY 29, 2019 — DECIDED JANUARY 21, 2020

———————————

Before RIPPLE, ROVNER, and BARRETT, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Neal Preston brought this putative
class action in which he claimed that Midland Credit Man-
agement, Inc. ("Midland"), had sent him a collection letter
that violated the Fair Debt Collection Practices Act
("FDCPA"), 15 U.S.C. §§ 1692–1692p. Specifically, he
claimed that the words "TIME SENSITIVE DOCUMENT" on

the envelope violated § 1692f(8)'s prohibition against "[u]sing any language or symbol," other than the defendant's business name or address, on the envelope of a debt collection letter. He also claimed that these words, and other language employed in the body of the letter, were false and deceptive, in violation of § 1692e(2) and (10).

On Midland's motion, the district court dismissed the complaint. The district court noted that the plain language of § 1692f(8) prohibited any writing on the envelope, but nevertheless concluded that there was a benign-language exception to the statutory language. Because the language "TIME SENSITIVE DOCUMENT" did not create any privacy concerns or expose Mr. Preston to embarrassment, the district court held that it fell within this exception. The district court found no merit with respect to Mr. Preston's claims under § 1692e.

We now reverse in part and affirm in part. We conclude that the language of § 1692f(8) is clear, and its application does not lead to absurd results. To the contrary, the prohibition of any writing on an envelope containing a debt collection letter represents a rational policy choice by Congress. Consequently, we conclude that the district court erred in dismissing Mr. Preston's claim under § 1692f(8). However, we agree with the district court that the language on the envelope and in the letter does not violate § 1692e and, therefore, affirm the dismissal of the claims brought under that section.

# I.

# BACKGROUND

## A.

In July 2017, Midland sent Mr. Preston a debt collection letter. The collection letter was enclosed in an envelope, which bore the words "TIME SENSITIVE DOCUMENT."[1] This internal envelope was enclosed in a larger envelope with a glassine covering so that the words on the internal envelope were visible to the recipient.

The enclosed letter set forth information about a debt that Midland sought to collect from Mr. Preston, as well as two discounted payment options if Mr. Preston submitted payment by a certain date. The first offered a discount of forty percent off the total debt balance if Mr. Preston paid the sum in a single payment by August 18, 2017. The second offered a discount of twenty percent off the total debt if Mr. Preston made six monthly installments, with the first payment due by August 18, 2017. The letter urged Mr. Preston to "[a]ct now to maximize … savings and put this debt behind you … ."[2] The letter further stated that the offer expired on August 18, 2017. At the bottom of the letter, just above the payment

---

[1] R.1 ¶ 27 (bold removed). In reviewing the dismissal of Mr. Preston's claims, we accept as true all well-pleaded facts set forth in his complaint and draw all reasonable inferences in his favor. *See, e.g.*, *Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 648 (7th Cir. 2017).

[2] *Id*. ¶ 37.

coupon, Midland included the following statement: "We are not obligated to renew any offers provided."[3]

**B.**

Following his receipt of the letter, Mr. Preston filed this action in which he alleged that the language on the envelope, the language in the letter, and the combination of the two violated the FDCPA. Specifically, in Count I, he alleged that the phrase "TIME SENSITIVE DOCUMENT" violated § 1692f(8) because it was language other than Midland's address that appeared on an envelope containing a debt collection letter. He also alleged that the envelope itself constituted a false representation of the character, amount, or legal status of a debt, under § 1692e(2)(a), as well a false or deceptive means to collect a debt under § 1692e(10). Count II made equivalent allegations on behalf of a class of consumers. Count III alleged that the envelope, together with the language of the discounted offers and the disclaimer that Midland was not obligated to renew any offers, "create[d] a false sense of urgency," which constituted both a "false representation of—the character, [and] legal status of any debt" in violation of § 1692e(2)(a), and a "false representation or deceptive means to collect … a debt" under § 1692e(10).[4] Count IV made equivalent allegations on behalf of the purported class. Counts V and VI alleged individual and class claims,

---

[3] *Id*. ¶ 36.

[4] *Id*. ¶¶ 66, 68 (second alteration in original) (internal quotation marks omitted). Count III also included an allegation that the envelope and language violated § 1692f; however, Mr. Preston abandoned that claim in his response to Midland's motion to dismiss. *See* R.23 at 11 n.1.

respectively, that the discounted offers, standing alone, violated §§ 1692e(2)(a), 1692e(10), and 1692f(8). Finally, Count VII alleged that Midland's letter violated the Illinois Consumer Fairness Act.

Midland moved to dismiss the complaint. It first observed that the purpose of § 1692f(8), as set forth in the legislative history, was to prohibit debt collectors from using language or symbols that revealed that the letter concerned debt collection; it was not intended to "bar the use of harmless words or symbols."[5] It further noted that several courts, including the Courts of Appeals for the Fifth and Eighth Circuits, had adopted a "'benign language' exception" to § 1692f(8)'s absolute prohibition of the use of any symbol or language on the envelope of the debt collection letter.[6] Because "TIME SENSITIVE DOCUMENT" did not suggest that the contents involved debt collection, Midland argued, this language fell within such an exception.

Turning to Mr. Preston's claim that the envelope and language together created a false sense of urgency, Midland submitted that the language it had employed fell within the safe harbor that we created in *Evory v. RJM Acquisitions Funding, L.L.C.*, 505 F.3d 769 (7th Cir. 2007). According to Midland, *Evory* involved "the same legal theory espoused by [Mr. Preston]," namely that consumers may be convinced that, if they do not act quickly, there will not be further op-

---

[5] R.20 at 4 (quoting *Lindbergh v. Transworld Sys., Inc.*, 846 F. Supp. 175, 180 (D. Conn. 1994)).

[6] *Id*. at 4–5.

portunities to settle their debt.[7] Midland maintained that its use of the safe-harbor language—"[w]e are not obligated to renew any offers provided"—merely informed the consumer that there may not be other settlement offers, while "dispel[ling] any false impression by the consumer as to his or her options."[8]

Finally, Midland contended that there simply was not any way that a consumer could misconstrue or misunderstand the offer language.[9] Consequently, the offer language, by itself or with the envelope, did not violate any provisions of the FDCPA.

Mr. Preston opposed the motion. He maintained that the plain language of § 1692f(8) prohibited the use of any language or symbol on the envelope other than the debt collector's business name or address. Moreover, he contended, the blanket prohibition set forth in § 1692f(8) achieves rather than frustrates the statute's purpose. Specifically, it discourages debt collectors from "tak[ing] liberties with Section 1692[f](8) by adding so-called 'benign language' to the envelopes of debt coll[ec]tion letters."[10]

Turning to his claims under § 1692e(2) and (10), Mr. Preston submitted that *Evory* was not controlling. He noted that the letter in *Evory* did not contain the words "'Act Now'" or

---

[7] *Id*. at 7.

[8] *Id.* at 7–8.

[9] *See id*. at 8 & n.2.

[10] R.23 at 7.

suggest that the consumer faced "'TIME SENSITIVE' pay-ment options."[11] Additionally, Mr. Preston argued that Mid-land's placement of the safe-harbor language "well away" from the offending language diminished the effect of the safe-harbor language on the consumer.[12]

The district court agreed with Midland and dismissed the complaint. It noted that two Courts of Appeals, the Fifth Cir-cuit in *Goswami v. American Collections Enterprise, Inc.*, 377 F.3d 488 (5th Cir. 2004), and the Eighth Circuit in *Strand v. Diversified Collection Service, Inc.*, 380 F.3d 316 (8th Cir. 2004), "ha[d] accepted … a benign language exception" to § 1692f(8).[13] On the basis of these authorities,[14] the district court was persuaded to reject a literal interpretation.[15] The court determined that the language "TIME SENSITIVE DOCUMENT" was indistinguishable from the phrases such as "priority mail" and "immediate reply requested" that the courts in *Goswami* and *Strand* had determined were benign.[16]

---

[11] *Id*. at 12 (bold removed).

[12] *Id.*

[13] R.26 at 4.

[14] The court also relied upon district court opinions that had followed *Goswami v. American Collections Enterprise, Inc.*, 377 F.3d 488 (5th Cir. 2004), and *Strand v. Diversified Collection Service, Inc.*, 380 F.3d 316 (8th Cir. 2004). *See* R.26 at 4–5.

[15] *Id*. at 4–5.

[16] *Id*. at 5.

Turning to Mr. Preston's claims under § 1692e, the court concluded that *Evory* was controlling. The district court explained that, like Midland, the debt collector in *Evory* had employed language designed to prompt consumers to act quickly to take advantage of the offers. Although such offers were not improper, the language could leave the impression that, if the consumer did not pay by the stated deadline, he may not have an opportunity to settle his debt. In reality, however, these offers frequently were renewed. "To address this," the district court explained, this court had "created safe harbor language for debt collectors to use when sending letters like that [Mr.] Preston received that offer discounts: 'We are not obligated to renew this offer.'"[17] The district court concluded that Midland had employed such language in its communication to Mr. Preston and had used it for its intended purpose: "to protect the unsophisticated consumer 'against receiving a false impression of his options' and protect the debt collector from claims that its offers are misleading."[18] Consequently, the district court held that Midland was protected by *Evory*'s safe harbor with respect to Mr. Preston's claims under § 1692e.

The district court therefore dismissed Mr. Preston's FDCPA claims on the merits. It declined to exercise supplemental jurisdiction over his claims under Illinois state law and, therefore, dismissed those without prejudice. Following entry of judgment, Mr. Preston timely appealed.

---

[17] *Id.* at 8 (quoting *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776 (7th Cir. 2007)).

[18] *Id.* (quoting *Evory*, 505 F.3d at 776).

## II.

Before this court, Mr. Preston maintains that the district court erred in dismissing his § 1692f(8) claim based on the language on the envelope. He also renews his § 1692e claims based on the envelope, the letter, and the collective language of both. We begin with his § 1692f(8) claim.[19]

## A.

As we previously noted, Mr. Preston submits that the plain language of § 1692f(8) prohibits any language or symbol, other than the debt collector's business name or address, from appearing on the envelope containing a debt collection letter. We agree.

In construing a statute, "we begin 'with the language of the statute.' If the statutory language is unambiguous and the 'statutory scheme is coherent and consistent' … '[t]he inquiry ceases.'" *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002)). Section 1692f of Title 15 provides:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

[19] Following oral argument, we determined that, in deciding this appeal, we would benefit from the views of the Consumer Financial Protection Bureau ("CFPB"), the agency to whom Congress has delegated rulemaking authority with respect to the FDCPA. The CFPB filed a brief as amicus curiae, to which both parties responded. We thank the CFPB for its submission.

**(1)** The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

**(2)** The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

**(3)** The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

**(4)** Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

**(5)** Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

**(6)** Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—

**(A)** there is no present right to possession of the property claimed as collateral through an enforceable security interest;

**(B)** there is no present intention to take possession of the property; or

**(C)** the property is exempt by law from such dispossession or disablement.

**(7)** Communicating with a consumer regarding a debt by post card.

**(8)** Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

The first sentence of § 1692f prohibits debt collectors from using unfair or unconscionable means to collect a debt. That prohibition is then followed by a specific list of conduct that violates the section. Among those acts specifically listed is the use of "any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer … except that a debt collector may use his business name" under prescribed circumstances. 15 U.S.C. § 1692f(8). On its face, the prohibition is clear: use of *any* language or symbol on an envelope, except for the debt collector's name (if it does not indicate that the collector is in the business of debt collection) and the debt collector's address, violates subsection (8).

Nevertheless, Midland maintains that a literal application of § 1692f(8) "would unquestionably lead to bizarre results."[20] It urges us to adopt the view of our sister circuits in *Strand* and *Goswami*, to hold that subsection (8) needs clarification, and to look to legislative history to guide our interpretation of that provision. We turn now to those cases.

In *Strand*, a debt collector, DCS, had sent a collection letter in an envelope with the words "PERSONAL AND CONFIDENTIAL" and "IMMEDIATE REPLY REQUESTED" printed on it; the envelope "also displayed a printed corporate logo depicting a grid with an upward-pointing arrow and the initials 'DCS.'" 380 F.3d at 317 (bold removed). In considering whether this language violated § 1692f(8)'s prohibition, the court first observed that a literal interpretation of statutory language would "create bizarre results" because, the court believed, "a debtor's address and an envelope's pre-printed postage would arguably be prohibited, as would any innocuous mark related to the post, such as 'overnight mail' and 'forwarding and address correction requested.'" *Id*. at 318.

"With this observation in mind," the court began its "analysis by considering whether DCS violated § 1692f(8) by printing its initials on the suspect envelopes." *Id*. The court noted that it was "not plainly clear [that] the statute prohibits the use of such initials as a corporate name." *Id.* It explained:

> While the statute forbids use of "any language
> or symbol," it makes an exception for the debt

---

[20] Appellee's Br. 12.

collector's business name, so long as the name does not reveal the collector's business. At issue then is whether the word "name," as used in the statute, encompasses references to a corporation by its initials.

We believe the word, as used modernly in commerce, can mean not only an appellation in the traditional sense of the word but also a more-abstract signifier, such as initials. In today's culture, when memorable brevity is paramount and words and statements are so commonly reduced to letters and numerals (e.g., Y2K), initials often have a wider currency than the names they represent.

*Id*.

The court in *Strand* looked primarily to two sources to guide its interpretation. The first was the FDCPA's statement of purpose "to eliminate abusive debt collection practices by debt collectors [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id*. at 318–19 (quoting 15 U.S.C. § 1692(e)). The second was a decision from the Central District of California that had recognized a benign-language exception for the words "'Personal & Confidential' and 'Forwarding and Address Correction Requested.'" *Id*. at 319 (quoting *Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456, 1466 (C.D. Cal. 1991)). After reviewing these decisions, the Eighth Circuit concluded that, "[i]n light of such clear and universal pronouncements on the purpose of the FDCPA, we believe a reading of the word 'name' encompassing initials and logos does not thwart Congressional

purpose in any way." *Id*. at 319. "By a natural extension," it continued, "this construction also renders benign the neutral logo and innocuous phrases printed on the DCS envelopes." *Id*.

In *Goswami*, the plaintiff alleged that "a 'priority letter' marking on the collection letter envelope" violated § 1692f(8). 377 F.3d at 491. In evaluating this claim, the Fifth Circuit concluded that the prohibition in § 1692f(8) reasonably could be read in one of two ways: 1) if read in isolation, it could be read as "barring any markings on the outside of … [the] envelope other than the names and addresses of the parties"; and 2) if read together with the prefatory language of § 1692f, it could be read as "only prohibit[ing] markings … that are unfair or unconscionable." *Id*. at 493. Believing the statutory language to be ambiguous, the court looked to the legislative history, the Federal Trade Commission's ("FTC") interpretation of the provision, and district court cases interpreting the provision, *see id*. at 494 (collecting cases), to conclude that a benign-language exception should apply. Examining the language at issue, it observed that "[n]othing about the marking 'priority letter' intimates that the contents of the envelope relate to collection of delinquent debts." *Id.* at 494. Consequently, the language did not violate § 1692f(8). *Id*.

We respectfully disagree with the approach taken by our sister circuits. Adherence to the plain wording of § 1692f(8) does not, as *Strand* suggests, prohibit the use of a debtor's address. Nor does the language prohibit pre-printed postage or the use of words such as "overnight mail." The section plainly sanctions "use of the mails" to communicate with a debtor and therefore also sanctions the use of the language

and symbols required for sending communications through the mail. It does not prohibit markings required by the United States Postal Service such as stamping or affixing language or symbols to ensure the successful delivery of the communication.

We also cannot agree with our sister circuits that the prefatory language of §1692f renders the provision ambiguous. The first sentence of §1692f prohibits a debt collector from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." It next sets forth a nonexhaustive list of conduct that constitutes "a violation of this section." *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 996 (7th Cir. 2003) ("Section 1692f states, without qualification, that 'the following conduct is a violation of this section.'"). Each subsection, (1) through (8), sets forth a discrete means of violating the statute, and the elements of each violation are determined by the language of the subsection. *Cf. Turner*, 330 F.3d at 996 (stating that "[w]hether the collection of a debt violates § 1692f(1) depends solely on two factors: (1) whether the debt agreement explicitly authorizes the charge; or (2) whether the charge is permitted by law," both of which appear in the text of f(1)). Nothing about the prefatory language of § 1692f renders the meaning of subsection (8) ambiguous.[21]

---

[21] We also are unpersuaded by the reasoning of the district court cases on which our sister circuits relied. *See Lindbergh*, 846 F. Supp. 175; *Johnson v. NCB Collection Servs.*, 799 F. Supp. 1298 (D. Conn. 1992); *Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456 (C.D. Cal. 1991). The court in both *Lindbergh* and *Johnson* followed *Masuda* in concluding that there is a benign-language exception to § 1692f(8). Turning to *Masuda*, the court

(continued … )

Because the statutory language neither leads to absurd results nor is ambiguous, resort to legislative history is neither necessary nor appropriate.[22] *See, e.g.*, *United States v. Sil-*

---

( … continued)

considered whether a debt collector had violated § 1692f(8) "by including on the outside of envelopes mailed to Masuda (1) notice that theft of mail or obstruction of delivery is a federal crime, (2) the language 'PERSONAL & CONFIDENTIAL' and (3) the phrase 'Forwarding and Address Correction Requested.'" 759 F. Supp. at 1466. The court acknowledged that the writing appeared to violate the proscription in § 1692f(8). It further acknowledged that, "[i]n some cases, a strict interpretation of the FDCPA may be necessary to protect consumer privacy and prevent embarrassment to consumers." *Id*. (citing S. Rep. No. 95-382 at 2–4 (1977)). It concluded however that "Congress' interest in protecting consumers … would not be promoted by proscribing benign language. Congress enacted § 1692f(8) simply to prevent debt collectors from 'using symbols on envelopes indicating that the contents *pertain to debt collection*.'" *Id*. (quoting S. Rep. No. 95-382 at 8). However, courts "are bound by the language of the statute as it is written" and "are not at liberty to rewrite [the] statute because [we] might deem its effects susceptible of improvement." *C.I.R. v. Lundy*, 516 U.S. 235, 252 (1996) (internal quotation marks omitted) (alterations in original). "If the statutory language is unambiguous, and the statutory scheme is coherent and consistent," no further analysis is necessary. *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (internal quotation marks omitted). The *Masuda* court never considered, in the first instance, whether the language of the statute was ambiguous therefore necessitating resort to legislative history.

[22] Resort to agency interpretations similarly is unnecessary when the statutory language is clear. *See, e.g.*, *United States v. Zuniga-Galeana*, 799 F.3d 801, 805 (7th Cir. 2015) ("We defer to an administering agency's interpretation of a statute only if the statute is ambiguous."); *Vulcan Const. Materials, L.P. v. Fed. Mine Safety and Health Review Comm'n*, 700 F.3d 297, 312 (7th Cir. 2012) (determining that, because the statute was not ambiguous, the court need not "reach the question of the proper deference

(continued … )

*va*, 140 F.3d 1098, 1102 (7th Cir. 1998) ("If the language is un-ambiguous, we need not resort to legislative history or other sources to glean the legislative intent of the statute."). The statutory language does, in fact, prohibit debt collectors from sending communications to consumers in envelopes bearing symbols that are indicative of debt collection. The language of the statute simply draws a clear line to ensure that consumers' rights are not lost in the interpretation of more subtle language. As one court has explained,

> [t]his approach provides certainty to debt col-lectors and avoids the problem of having to decide on a case by case basis what language or symbols intrude into the privacy of the debtor or otherwise constitute "an unfair or unconscionable means to collect or attempt to collect a debt." [15 U.S.C.] § 1692f. Congress

---

( … continued)

owed to the Secretary's interpretation of the statute"). In this case, the clear language of the statute makes it unnecessary for us to consider the Federal Trade Commission Staff Commentary on the Fair Debt Collec-tion Practices Act, 53 Fed. Reg. 50097 (Dec. 13, 1988), on which Midland relies to support its argument that we should recognize a benign-language exception. Even if we needed agency guidance, however, the Commentary acknowledges that it is "not a formal … rule or advisory opinion" and is "not binding on the Commission or the public." *Id*. at 50101. Moreover, the CFPB, the agency now charged with administration and enforcement of the FDCPA, *see* 15 U.S.C. § 1692*l*(b)(6), (d); 12 U.S.C. § 5512(b)(1), (4), has expressed a contrary view: Based on the plain mean-ing of the statute, the use of any language or symbol, other than the debt collector's name or address ("if such name does not indicate that he is in the debt collection business") violates § 1692f(8). *See* Amicus Br. (CFPB) 11.

> wrote into the law a bright-line rule with re-
> spect to markings on envelopes sent to debtors
> and authorized the award of damages to debt-
> ors if debt collectors violate the plain language
> of § 1692f(8).

*Palmer v. Credit Collection Servs., Inc.*, 160 F. Supp. 3d 819, 822–23 (E.D. Pa. 2015). In providing certainty, this provision furthers the FDCPA's overall purpose of "eliminat[ing] abusive debt collection practices by debt collectors" and "insur[ing] that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

In sum, the meaning of § 1692f(8) is clear: When a debt collector communicates with consumers through the mails, it may not use any language or symbol on the envelope except for its business name or address, as long as the name does not indicate that he is in the debt collection business. Turning to the facts here, there is no question that the language "TIME SENSITIVE DOCUMENT" appears on the envelope enclosing a communication to a consumer. It is equally apparent that the language at issue does not fall within the itemized exception set forth in subsection (8): It is not Midland's name nor its address. The inclusion of this phrase thus violates § 1692f(8), and the district court erred in dismissing the claim set forth in Count I of Mr. Preston's complaint.

**B.**

Mr. Preston also maintains that the combination of the language of the discounted offers, the statement that Midland was not obligated to renew the offers, and the words

"TIME SENSITIVE DOCUMENT" on the envelope, constituted both a false representation of the character and legal status of any debt in violation of § 1692e(2)(A)[23] and a "false representation or deceptive means to collect … a debt" under § 1692e(10).[24] We evaluate § 1692e claims under the unsophisticated consumer standard, *see, e.g.*, *Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 501 (7th Cir. 1999), and "ask whether someone of modest education and limited commercial savvy would likely be deceived by the letter," *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 344 (7th Cir. 2018).

---

[23] 15 U.S.C. § 1692e(2)(A) provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

…

(2) The false representation of—

(A) the character, amount, or legal status of any debt

… .

[24] 15 U.S.C. § 1692e(10) provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

…

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

"[I]f it is 'apparent from a reading of the letter that not even a significant fraction of the population would be misled by it,' then plaintiff fails to state a claim and dismissal is appropriate." *Id.* at 342 (quoting *Zemeckis v. Glob. Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012)).[25]

Mr. Preston's allegations closely mirror those that we addressed in *Evory*. In that case, the plaintiffs complained that the following language violated § 1692e:

> "[W]e would like to offer you a unique opportunity to satisfy your outstanding debt"—"a settlement of 25% OFF of your current balance. SO YOU ONLY PAY $[____] In ONE

---

[25] As an initial matter, Mr. Preston maintains that the district court never should have granted Midland's motion to dismiss his § 1692e claims because Midland's "Motion to Dismiss only sought to dismiss Plaintiff's claim that the Collection Letter Envelope violated Section 1692f(8)." Appellant's Br. 18. Like the district court, we disagree with Mr. Preston's characterization of Midland's motion. Midland clearly requested dismissal of Mr. Preston's entire complaint. *See* R.20 at 8. Additionally, in its memorandum in support of its motion, Midland included an argument with the heading "M[idland's] collection letter and envelope do not create a false sense of urgency[.]" *Id*. at 6 (bold removed). Although it did not mention explicitly § 1692e, Midland discussed in detail our decision in *Evory*, which created safe-harbor language that debt collectors may use to avoid violations of § 1692e. In its memorandum, Midland argued that *Evory* disposed of Mr. Preston's claim that the envelope and letter together "create[d] a false sense of urgency," and Midland specifically referenced allegations that Mr. Preston had made in Count III of his complaint (seeking relief under § 1692e). R.20 at 7–8. Midland also addressed the merits of Mr. Preston's claims that the language of the discounted offers standing alone violated § 1692e. *See id*. at 8 n.2. Consequently, there is no merit to Mr. Preston's waiver argument.

> PAYMENT that must be received no later than 40 days from the date on this letter." Or "TIME'S A WASTIN'! … Act now and receive 30% off … if you pay by March 31st." Or we are "currently able to offer you a substantial discount of *50% off* your Current Balance *if we receive payment by 05–14–2004* [.]"

*Evory*, 505 F.3d at 775. In evaluating this language, we noted that "[t]here is nothing improper about making a settlement offer." *Id*. Nevertheless, because debt collectors "frequently renew their offers if the consumer fails to accept the initial offer," we were concerned that "unsophisticated consumers may think that if they don't pay by the deadline, they will have no further chance to settle their debt for less than the full amount." *Id.* We also noted, however, that requiring debt collectors to disclose their exact settlement policies "would disintegrate" the debt collection process. *Id*. To accommodate the competing goals of the statute, we fashioned a safe harbor that would protect the consumer "against receiving a false impression of his options" while encouraging debt collectors to make settlement offers. *Id.* at 775–76. We rested on the following language: "We are not obligated to renew this offer." *Id.* at 776. We reasoned that this statement would inform the unsophisticated consumer "that there [wa]s a renewal possibility but that it [wa]s not assured." *Id*.

Mr. Preston's communication, like that of the plaintiffs in *Evory*, included language—"Act now," "TIME SENSITIVE DOCUMENT,"[26] and time limits on the settlement offers—

---

[26] R.1 ¶¶ 27, 38 (bold removed).

that suggested that the consumer had to settle his debt in the most expeditious manner possible. However, at the end of Mr. Preston's letter, Midland also included safe-harbor language as in *Evory*: "We are not obligated to renew any offers provided."[27] The inclusion of this language cured any misimpression that an unsophisticated consumer might have formed concerning the meaning of the settlement offers.

Mr. Preston submits, however, that the language of his letter is more egregious and, therefore, that *Evory*'s safe-harbor language should not shield Midland from liability under § 1692e. He maintains that the words "TIME SENSITIVE DOCUMENT" on the envelope of the communication, as well as the location of the safe-harbor language in the body of the communication, renders *Evory*'s safe-harbor language ineffectual. We cannot accept these contentions. In *Evory*, our concern was "that unsophisticated consumers may think that if they don't pay by the deadline, they will have no further chance to settle their debt for less than the full amount." 505 F.3d at 775. The words "TIME SENSITVE DOCUMENT" on Mr. Preston's envelope simply reiterate the message in the communication itself, which urges the debtor to "[a]ct now" and sets forth an expiration date for the offer. Words of urgency were precisely what was at issue in *Evory* and what the safe-harbor language was meant to address.

Similarly, the placement of the safe-harbor language in Mr. Preston's communication does not negate its effect. Mr. Preston relies on *Boucher v. Finance System of Green Bay*,

---

[27] *Id*. ¶ 36.

*Inc.*, 880 F.3d 362 (7th Cir. 2018), in which we observed that "a debt collector is only entitled to safe harbor protection if the information he furnishes is accurate and he does not obscure it by adding confusing other information (or misinformation)." *Id*. at 370 (internal quotation marks omitted). He submits that "the formatting [of] the letter purposefully pushes the 'safe harbor' language to a place on the letter where its application and contest [sic] is rendered meaningless."[28] In essence, Mr. Preston maintains that the safe harbor is without effect unless it immediately follows the language of the offers. We cannot accept this contention. The safe-harbor language appears on the face of the letter in the same font and font size as the offer language. It is not lost in unnecessary verbiage, but is set apart and centered on a line. It is not obscured in any way.

Here, Midland accurately and appropriately used the safe-harbor language we fashioned in *Evory*. Consequently, the district court did not err in dismissing the claim set forth in Counts III and IV of Mr. Preston's complaint.[29]

---

[28] Appellant's Br. 21.

[29] Following oral argument, Mr. Preston moved for "leave to cite to additional collection letters sent to him in response to question posed during oral argument." *See* App. R. 34-1 (capitalization removed). On its face, the motion purports to supply three additional letters sent to Mr. Preston to establish that the discounted offers in fact were renewed. In reality, Mr. Preston is using what should be a perfunctory motion to provide more fulsome responses to oral argument questions and to reargue his case. We therefore deny Mr. Preston's motion.

We note, however, that, even if we had allowed the submission of the additional letters, it would not have altered our analysis. In *Evory*, we

(continued … )

## C.

Lastly, Mr. Preston contends that Midland violated § 1692e because its description of the offers in the communication were "meaningless, confusing, misleading and convoluted."[30] Mr. Preston acknowledges that the letter states: "Act now to maximize your savings and put this debt behind you."[31] He further acknowledges that the letter identifies "two discounted payment options, one for 40% off the balance and another at 20% off the balance."[32] Nevertheless, he maintains that the letter is confusing because it "does not explain how being 'pre-approved for a discount program' and making one of the two discounted payment options will impact the remainder of the debt."[33] Mr. Preston suggests that the reader is left to wonder whether "the debt [will] be written off? Will the debt be sold to another debt owner?

---

( … continued)

observed that debt collectors "frequently renew their offers if the consumer fails to accept the initial offer," and we fashioned the safe-harbor language so that unsophisticated consumers would not conclude that "they w[ould] have no further chance to settle their debt for less than the full amount." 505 F.3d at 775. Here, the letters merely show that Midland did renew its offers to Mr. Preston. This is an eventuality anticipated by *Evory* and therefore encompassed within its holding.

[30] Appellant's Br. 22.

[31] *Id.*

[32] *Id.* at 21.

[33] *Id.*

[Or] [w]ill another debt collector attempt to collect the remaining amounts?"[34]

As we have noted, we evaluate § 1692e claims under the unsophisticated consumer standard. *O'Boyle*, 910 F.3d at 344. The unsophisticated consumer "possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses 'reasonable intelligence,' and is capable of making basic logical deductions and inferences." *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000). Consequently, in evaluating § 1692e claims, we "ask 'whether a person of modest education and limited commercial savvy would be likely to be deceived' by the debt collector's representation." *Dunbar v. Kohn Law Firm, S.C.*, 896 F.3d 762, 764 (7th Cir. 2018) (quoting *Evory*, 505 F.3d at 774).

Here, we do not share Mr. Preston's concern that the language of the communication will plague the unsophisticated consumer with doubt about the effect of the payoff options. Midland's letter congratulates the consumer on being "pre-approved for a discount program designed to save you money," invites the consumer to "[a]ct now to … put this debt behind you," gives two discounted payment options, and indicates that the consumer can save up to $1,235.22 by taking advantage of the offers.[35] Read literally, the meaning of the letter is clear: If the consumer takes advantage of one of the discounted payoff options, he will be rid of the debt. A consumer who interpreted the letter to mean that the debt

---

[34] *Id.* at 22.

[35] R.1 ¶¶ 26, 37; Appellant's Br. 5.

could survive the payoff and be sold to another debt collector either would be misreading the words or engaging in a flight of fancy. Such interpretations do not suffice to state a claim under § 1692e. *See Dunbar*, 896 F.3d at 765 (rejecting the plaintiff's argument in part because it would have required the "unsophisticated consumer" to "understand the word 'may' to mean 'will'"); *Gruber v. Creditors' Prot. Serv., Inc.*, 742 F.3d 271, 274 (7th Cir. 2014) (noting that the unsophisticated consumer "does not interpret [collection letters] in a bizarre or idiosyncratic fashion"). Moreover, the letter is written using common sales language—"discount," "40% off," "20% off"—that consumers regularly encounter. Because "it is apparent from a reading of the letter that not even a significant fraction of the population would be misled by it," *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012) (internal quotation marks omitted), the district court properly dismissed Mr. Preston's § 1692e claims.

**Conclusion**

For the foregoing reasons, we affirm the judgment of district court dismissing Mr. Preston's claims under § 1692e. However, we reverse the district court's judgment dismissing Mr. Preston's claim under § 1692f(8) and remand for further proceedings consistent with this opinion. We express no view on whether the class Mr. Preston seeks to represent should be certified. Each party will bear its costs in this appeal.

AFFIRMED in part; REVERSED and REMANDED in part

ROVNER, *Circuit Judge*, concurring. My colleague has penned a thorough and well-reasoned opinion in all respects and has done a great service to this circuit and, one hopes, others in clarifying that the plain language of the statute does not contain a benign-language exemption. I join the opinion in full. I write separately simply to point out one area in which the clarity from our circuit could be improved regarding the second issue for our review—the matter of safe-harbor language for claims under section 1692e of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e.

As section B of the opinion makes clear, in *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769 (7th Cir. 2007), this court noted the tension between allowing creditors to use persuasive language to recover debts, and protecting unsophisticated consumers from "false, deceptive or misleading representations." *See* 15 U.S.C. § 1692e(2)(A); *Evory*, 505 F.3d at 775-76. In other words, creditors often use language that implies that debtors only have a limited time to take advantage of a settlement offer, when, in fact, most creditors continue to renew their offers, and would be pleased to collect a creditor's money at any time. As the opinion notes, "[t]o accommodate the competing goals of the statute, we fashioned a safe harbor that would protect the consumer 'against receiving a false impression of his options' while encouraging debt collectors to make settlement offers." *Ante* at 20 (citing *Evory*, 505 F.3d at 775–76). That safe-harbor language is as follows: "We are not obligated to renew this offer."

I have doubts that this language actually accommodates the competing goals that the *Evory* court identified. In fact, the current safe-harbor language emphasizes and amplifies

the creditor's message that it is a time-limited offer. The language is no different from the creditors' language of "limited time offer" or a "time sensitive matter," or "act now," and reinforces the idea that if the debtor does not act immediately, she may lose the opportunity to do so forever. See *Evory*, 505 F.3d at 775. ("The concern is that unsophisticated consumers may think that if they don't pay by the deadline, they will have no further chance to settle their debt for less than the full amount"). As such, I propose that this circuit reconsider whether the language of the safe-harbor provision announced in *Evory* realistically honors the goals that the opinion sought. Adding the following two words to the language, undoubtedly would do so more accurately: "We *may*, *but* are not obligated to, renew this offer."

The safe-harbor language described in the *Evory* decision, however, stands. As the opinion notes, Midland Credit used the language that this circuit sanctioned, and did so appropriately. Consequently, under the current status of our circuit's law, I agree that the district court did not err in dismissing the claims set forth pursuant to section 1692e of the Act. Preston did not raise the question of the safe-harbor language in this case, and therefore this is not the appropriate time to reconsider it, but should it emerge in a future case, I urge the court to reexamine whether this safe-harbor language achieves the intended balance between the interests of creditors and debtors.