RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0386p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

LYNNE DONOVAN,

　　　　　　　　　　*Plaintiff-Appellant*,

　　*v.*

FIRSTCREDIT, INC.,

　　　　　　　　　　*Defendant-Appellee*.

No. 20-3485

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:19-cv-03006—Michael H. Watson, District Judge.

Argued: December 4, 2020

Decided and Filed: December 18, 2020

Before: MOORE, COOK, and STRANCH, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Geoffrey C. Parker, HILTON PARKER, Pickerington, Ohio, for Appellant. David B. Shaver, SURDYK, DOWD & TURNER CO., L.P.A., Dayton, Ohio, for Appellee. **ON BRIEF:** Geoffrey C. Parker, HILTON PARKER, Pickerington, Ohio, for Appellant. David B. Shaver, Jeffrey C. Turner, SURDYK, DOWD & TURNER CO., L.P.A., Dayton, Ohio, for Appellee.

_____

## OPINION

_____

　　KAREN NELSON MOORE, Circuit Judge. Plaintiff Lynne Donovan appeals from a judgment entered against her after the district court granted Defendant FirstCredit, Inc.'s

("FirstCredit") motion for judgment on the pleadings.  The central issue is whether Donovan's allegations—concerning a letter that FirstCredit sent to Donovan regarding a purported medical debt—are sufficient to state a claim for relief under 15 U.S.C. § 1692f(8), a provision of the Fair Debt Collection Practices Act ("FDCPA")[1] that limits the language and symbols that debt collectors may employ on an envelope when communicating with a consumer by mail.  The district court determined that FirstCredit's letter did not run afoul of § 1692f(8) and accordingly granted judgment on the pleadings in favor of FirstCredit.  We disagree, and so we **REVERSE** the judgment of the district court and **REMAND** for further proceedings.

## I.  BACKGROUND

On or about April 11, 2019, Donovan received from FirstCredit a letter "demanding payment of a purported medical debt incurred with Mount Carmel Health System."  R. 11 (First Am. Compl. at ¶ 8) (Page ID #50).  The letter came in an envelope with two transparent glassine windows on its face, stacked one on top of the other, together taking up most of the left half of the envelope.  *Id.* at ¶ 9 & Ex. A (Page ID #50, 60).  Because the letter, when folded, is smaller than the envelope containing it, the text visible through the glassine windows depends in part on where the letter is sitting within the envelope.  *See id.* at ¶ 10 (Page ID #50).  No matter how the letter is situated, Donovan's name and address are always visible through the window located in the bottom left quadrant of the envelope.  *Id.* at ¶ 11 (Page ID #51).  Likewise, always visible through the window situated in the top left quadrant of the envelope is an empty checkbox followed by the phrase "Payment in full is enclosed."  *Id.* at ¶ 11 (Page ID #51).  Sometimes, a second empty checkbox followed by "I need to discuss this further. My phone number is _____," is visible directly below the first.  *Id.* at ¶ 12 (Page ID #51).

Donovan filed her operative First Amended Complaint on October 1, 2019.  In it, she alleges that the visibility of the checkboxes and the accompanying language through the glassine window in FirstCredit's envelope "created the risk that anyone who caught a glimpse of Plaintiff's mail would recognize that she was receiving mail from a debt collector, causing her embarrassment and emotional distress."  *Id.* at ¶ 15 (Page ID #51).  Donovan sought relief under

---

[1]15 U.S.C. § 1692 *et seq.*

the FDCPA, alleging that FirstCredit violated § 1692f(8), which prohibits a debt collector's use of "any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails . . . except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business."**[2]**  She also sought relief under Ohio's Consumer Sales Practices Act ("CSPA"), alleging that any violation of the FDCPA constitutes a violation of Ohio Revised Code § 1345.02(A), which prohibits "unfair or deceptive act[s] or practice[s] in connection with a consumer transaction." Donovan sought statutory damages, costs, and attorney's fees, and also sought to represent a class of similarly situated consumers.

After answering Donovan's operative complaint, FirstCredit moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  *See generally* R. 17 (Mot. J. Pleadings) (Page ID #85–98).  FirstCredit argued that § 1692f(8) includes an implied "benign language" exception and that its April 11, 2019 letter to Donovan did not violate that provision because the markings visible through the glassine windows of its envelope were benign.  *Id.* at 5–12 (Page ID #89–96).  Donovan responded that § 1692f(8) should not be interpreted to include a "benign language" exception and that, even if it did, the language visible through the glassine windows of FirstCredit's envelope was not benign.  *See generally* R. 18 (Mem. in Opp.) (Page ID #99–119).  The district court, noting a circuit split on the issue, concluded that § 1692f(8) should be read to include a "benign language" exception, relying on *Strand v. Diversified Collection Service, Inc.*, 380 F.3d 316, 319 (8th Cir. 2004), and *Goswami v. American Collections Enterprise, Inc.*, 377 F.3d 488, 494 (5th Cir. 2004).  R. 25 (Op. & Order at 4–7) (Page ID #167–70).  Finding the language at issue to be benign, the district court granted FirstCredit's motion for judgment on the pleadings.  *Id.*

Judgment was entered against Donovan on May 5, 2020, R. 26 (J.) (Page ID #163), and Donovan timely appealed, *see* R. 27 (Notice of Appeal) (Page ID #173).

---

**[2]**Donovan also alleged that FirstCredit violated 15 U.S.C. § 1692e(10), a provision of the FDCPA that prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  However, Donovan does not address this claim on appeal, and so we do not discuss it here.

## II. STANDING

Before reaching the merits, we must first determine whether Donovan's allegations satisfy the elements of standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ("Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element [of standing]." (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975))). FirstCredit raised this argument for the first time at oral argument on appeal, but we have an independent obligation to ensure that the parties have standing and so will address the issue here. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) ("[I]t is well established that the court has an independent obligation to assure that standing exists."). In short, we hold that Donovan has sufficiently alleged that she has standing to bring her claim under the FDCPA.

In limiting the "judicial power of the United States" to "Cases" and true "Controversies," Article III of the Constitution requires that litigants in federal court have a "personal stake in the outcome" of the case, i.e., standing to sue. *Baker v. Carr*, 369 U.S. 186, 204 (1962). Standing has three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547. As for the first element, an "injury in fact" is one that is "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). By satisfying these requirements, the plaintiff assures us that we are acting within our constitutionally prescribed role in weighing in on the matter. *See id.* at 1547 ("The [standing] doctrine developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood.").

At oral argument, FirstCredit argued that Donovan stumbles at the first standing hurdle because she has not suffered an injury in fact. In her rebuttal, Donovan responded that this requirement is satisfied because someone could have seen FirstCredit's letter to her—which she alleges violated her consumer rights under the FDCPA—and identified it as a debt-collection

letter.[3]   These arguments are directed towards the concreteness requirement, which limits standing to plaintiffs who have suffered a "real" rather than an "abstract" injury, i.e., an injury that "actually exist[s]." *Id.* at 1548 (quoting Webster's Third New International Dictionary 472 (1971); Random House Dictionary of the English Language 305 (1967)).

To satisfy standing's concreteness requirement, Donovan needs to allege something more than a "bare procedural violation," *id.* at 1549, of the FDCPA.  This is because "the violation of a procedural right granted by statute is sufficient in and of itself to constitute concrete injury in fact" only where "Congress conferred the procedural right to protect a plaintiff's concrete interests and the procedural violation presents a material risk of real harm to that concrete interest." *Macy v. GC Servs. LP*, 897 F.3d 747, 756 (6th Cir. 2018) (citing *Spokeo*, 136 S. Ct. at 1549).  Thus, because Donovan's alleged injury is based on the *risk* that someone would see the envelope that she received from FirstCredit and identify it as coming from a debt collector, we must determine whether that risk involves a concrete interest that Congress sought to protect through the FDCPA, and in particular § 1692f(8).

Here, Donovan alleges that the statutory violation by FirstCredit presented the risk of public disclosure of her status as a purported debtor.[4]   That risk "implicates a core concern animating the FDCPA—the invasion of privacy." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014); *see also Macy*, 897 F.3d at 756 ("Congress enacted the FDCPA because of 'abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors' that 'contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, *and to invasions of individual privacy*.'" (emphasis added) (quoting 15 U.S.C. § 1692(a))).   Section 1692f(8)'s prohibition on the

---

[3]Donovan did not argue that her allegation that FirstCredit's letter caused her "embarrassment and emotional distress," R. 11 (First Am. Compl. at ¶ 15) (Page ID #51), is alone sufficient to plead an injury in fact, and we need not address that question given that we agree with her stated argument. *See generally Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 870–75 (6th Cir. 2020) (Murphy, J., concurring).

[4]As a factual matter, we do not doubt that this risk is inherent in the language visible through the glassine window of FirstCredit's envelope.  Taken in context, the phrases "Payment in full is enclosed" and "I need to discuss this further. My phone number is _____" can be read to indicate that the recipient owes a debt that the sender is attempting to collect, and that the sender believes that the recipient may be unable to pay.  That similar language may be used in correspondence outside of the debt collection context does not eliminate the risk that someone who looks at the letter could recognize it as coming from a debt collector.

language and symbols that debt collectors may employ on envelopes when communicating with consumers protects that privacy interest by preventing at least those markings that would identify the letter as coming from a debt collector. *See Douglass*, 765 F.3d at 303; *Strand*, 380 F.3d at 319. And this interest is a concrete one insofar as an invasion of privacy is a "harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549; *see DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 280 (3d Cir. 2019) (citing *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 357–58 (3d Cir. 2018)). Thus, Donovan's allegation that FirstCredit violated § 1692f(8) "is sufficient in and of itself to constitute concrete injury" without the further allegation of an "*additional* harm beyond the one Congress has identified." *Macy*, 897 F.3d at 756 (quoting *Spokeo*, 136 S. Ct. at 1549); *see St. Pierre*, 898 F.3d at 357–58 (holding that plaintiff had standing to sue for a violation of § 1692f(8) where debt-collection letter's envelope exposed the account number the debt collector had assigned to him); *DiNaples*, 934 F.3d at 279–80 (same, where plaintiff's "debt collector sent her a letter in an envelope displaying a QR code that, when scanned, revealed her account number with the debt collection agency," even without an allegation that someone had actually intercepted the mail and scanned the QR code).

Donovan has no difficulty with the remaining requirements of standing. Her injury is "particularized" and "actual" in that the letter that caused her injury was addressed and sent to Donovan specifically. *See Spokeo*, 136 S. Ct. at 1548. In addition, her injury is directly traceable to FirstCredit's conduct, because it was FirstCredit that sent her the letter. *See id.* at 1547. Finally, a favorable judicial resolution of her case would redress Donovan's injury with damages. *See id.* Thus, Donovan has alleged facts that satisfy the elements of standing, and may pursue in federal court her claim that FirstCredit violated § 1692f(8). With that threshold matter behind us, we turn to the merits of Donovan's appeal.

### III. MERITS

We review de novo a grant of judgment on the pleadings. *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001). In doing so, we apply the same standard used to evaluate a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). *Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017). Thus, we ask whether the "complaint . . . contain[s]

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To make this determination, "[w]e must construe the complaint in the light most favorable to the plaintiff and accept all [factual] allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).

Because this appeal involves the interpretation of § 1692f(8), our task is to give effect to congressional intent.  *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 542 (1940) ("In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress.").  This inquiry begins—and sometimes ends—with "the plain language of the statute." *The Ltd., Inc. v. Comm'r*, 286 F.3d 324, 332 (6th Cir. 2002). "If the language of the statute is clear, the court applies the statute as written." *In re Corrin*, 849 F.3d 653, 657 (6th Cir. 2017).  Where, however, "the language is ambiguous or leads to an absurd result," courts may rely on extra-textual sources, such as legislative history or administrative guidance, to interpret a statute.  *Id.* (legislative history); *see Tenn. Hosp. Ass'n v. Azar*, 908 F.3d 1029, 1037–38 (6th Cir. 2018) (administrative guidance).

Congress structured § 1692f as a general prohibition followed by eight instances of violative conduct, the last of which is at issue here:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . . .
>
> (8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

Donovan argues that our interpretive task ends with this text, which unambiguously forbids the markings visible through the glassine windows of the letter she received from FirstCredit.  For its part, FirstCredit argues that a literal reading of § 1692f(8) would lead to absurd results, such that it is appropriate to go beyond the text and read a "benign language" exception—i.e., an exception for markings that do not indicate that the communication is from a debt collector—into the

statute based on its legislative history and administrative guidance from the FTC. According to FirstCredit, Donovan has failed plausibly to allege a violation of § 1692f(8) because the markings visible through the glassine windows of its envelope are benign.[5]

The parties' dispute arises in the context of a newly formed circuit split as to the proper interpretation of § 1692f(8), which derives from a disagreement as to whether the provision's plain text governs its application. On one side of the circuit split, the Seventh Circuit has held that § 1692f(8)'s plain text unambiguously prohibits markings on envelopes other than those "required for sending communications through the mail," the debt collector's return address, and, in limited prescribed circumstances, the debt collector's name. *Preston v. Midland Credit Mgmt., Inc.*, 948 F.3d 772, 782, 784 (7th Cir. 2020). On the other side of the split, the Fifth and Eighth Circuits have held that § 1692f(8) is ambiguous or that it leads to absurd results, invoking legislative history and administrative guidance to read a "benign language" exception into the statute. *Strand*, 380 F.3d at 319; *Goswami*, 377 F.3d at 494. This court has not yet decided whether § 1692f(8) is amenable to a "benign language" exception.[6]

For the reasons that follow, we hold that Donovan has stated a claim for relief under § 1692f(8), the plain text of which forecloses a "benign language" exception. Because a literal reading of the unambiguous text of § 1692f(8) does not lead to an absurd result, we have no cause to reach beyond the text and rely on legislative history or administrative guidance to read a "benign language" exception into § 1692f(8).

**A. A Literal Reading of § 1692f(8) Does Not Lead to an Absurd Result.**

Of the two doctrines that could support reading a "benign language" exception into § 1692f(8)—ambiguity and absurd results—FirstCredit's arguments rely primarily on the latter. Under this canon of statutory construction, "[i]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative

---

[5]FirstCredit does not dispute that it qualifies as a "debt collector" within the meaning of the statute, nor does it dispute that Donovan qualifies as a "consumer."

[6]This court has, however, clarified a preliminary matter, holding that markings visible through an envelope's glassine window fall within the ambit of § 1692f(8) because they qualify as language or symbols "on any envelope" within the meaning of the statute. *Cagayat v. United Collection Bureau, Inc.*, 952 F.3d 749, 755 (6th Cir. 2020).

purpose are available." *Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425, 432 (6th Cir. 2012) (quoting *Lockhart v. Napolitano,* 573 F.3d 251, 261 (6th Cir. 2009)). "Only when following the literal language of the statute would lead to 'an interpretation which is inconsistent with the legislative intent or to an absurd result' can a court modify the meaning of the statutory language." *Tenn. Prot. & Advoc., Inc. v. Wells*, 371 F.3d 342, 350 (6th Cir. 2004) (quoting *Appleton v. First Nat'l Bank of Ohio,* 62 F.3d 791, 801 (6th Cir. 1995)). Thus, the absurd-results doctrine sanctions the use of extra-textual sources to contravene statutory text only if there is no alternative and reasonable interpretation available that, consistent with legislative purpose, would avoid the absurd result. *See id.*; *In re Corrin*, 849 F.3d at 657 ("When the language is ambiguous or leads to an absurd result, the court may look at the legislative history of the statute to help determine the meaning of the language.").

FirstCredit argues that § 1692f(8) leads to an absurd result because the provision simultaneously endorses debt collectors' use of the mail to communicate with consumers while prohibiting debt collectors from including language and symbols on their envelopes that are necessary for communicating by mail—for example, the consumer's address and postage. Appellee Br. at 10–13. To FirstCredit, this absurdity results from Congress's failure to exempt the consumer's address and postage from what is otherwise a blanket prohibition on "any language or symbol" on the envelope (as Congress did with the exception for the debt collector's address and name). *Id.* The essence of this approach to reading § 1692f(8) is that the provision's blanket prohibition is so sweeping that it inadvertently forbids language and symbols required of mail communication, even though Congress plainly intended to endorse debt collectors' ability to communicate with consumers by mail. The Eighth Circuit reached a similar conclusion in *Strand*, before turning to legislative history and administrative guidance to read a "benign language" exception into the statute. 380 F.3d at 318 ("Under [the plaintiff's] literal reading of § 1692f(8), a debtor's address and an envelope's pre-printed postage would arguably be prohibited, as would any innocuous mark related to the post, such as 'overnight mail' and 'forwarding and address correction requested.'").

The flaw in FirstCredit's argument and the Eighth Circuit's reasoning is that each ignores an alternative, available, and reasonable reading of § 1692f(8), which allows the debt collector to

include the consumer's address and postage on the envelope.  As explained by the Seventh Circuit in *Preston*, § 1692f(8) "plainly sanctions 'use of the mails' to communicate with a debtor and therefore also sanctions the use of the language and symbols required for sending communications through the mail."  948 F.3d at 782.  Put differently, the blanket prohibition on "any language or symbol" is triggered only "*when* communicating with a consumer by use of the mails," § 1692f(8) (emphasis added), and thus operates under the presupposition that the envelope used by the debt collector will employ those features necessary to facilitate its delivery.  In this context, the provision's blanket prohibition is best understood as forbidding "any language or symbol" on the envelope other than "language or symbols to ensure the successful delivery of the communication," *Preston*, 948 F.3d at 782, with a statutory carve-out for the debt collector's return address and its name (where the name does not indicate that the sender is a debt collector).  *See also Peter v. GC Servs. L.P.*, 310 F.3d 344, 351 (5th Cir. 2002).

This reading of § 1692f(8) is fully consistent with the FDCPA's three stated purposes, and even more so than a "benign language" exception.  *See Haggar Co. v. Helvering*, 308 U.S. 389, 394 (1940) ("A literal reading of [a statute] which would lead to absurd results is to be avoided when [the statute] can be given a reasonable application consistent with [its] words *and with the legislative purpose*.") (emphasis added).  First, interpreting § 1692f(8) to exempt only language and symbols that facilitate mail delivery serves to "eliminate abusive debt collection practices by debt collectors."  15 U.S.C. § 1692(e).  Prohibiting language and symbols on envelopes aside from what is required for efficient mail delivery furthers the "purpose of preventing embarrassment resulting from conspicuous language visible on an envelope that indicates that the contents of the envelope pertain to debt collection."  *Cagayat*, 952 F.3d at 755.  Although the breadth of the prohibition may sweep beyond what would strictly be required to achieve that purpose, "[t]he language of the statute simply draws a clear line to ensure that consumers' rights are not lost in the interpretation of more subtle language."  *Preston*, 948 F.3d at 783.

Second, interpreting § 1692f(8) to exempt only language and symbols that facilitate mail delivery "insure[s] that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).  This reading of § 1692f(8)

applies across the board to all debt collectors and provides an easy-to-follow, predictable rule.  A more flexible approach to § 1692f(8)—like a "benign language" exception—would incentivize gamesmanship, disadvantaging ethical debt collectors that are unwilling to push the limits of the rule in favor of their less scrupulous competitors.  *Cf. Cagayat*, 952 F.3d at 757 ("A contrary decision would permit an end-run around § 1692f(8) by clever envelope, paper, or font selection.").

Third, the reading of § 1692f(8) adopted in *Preston* "promote[s] consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  It is no secret that one of the advantages of bright-line rules is that they are easier to apply consistently.  *See, e.g.*, *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202–03 (1988).  Indeed, as more and more courts apply the "benign language" exception it becomes increasingly difficult to reconcile the results.  *Compare Douglass*, 765 F.3d at 305–06 (account number specific to the recipient, although perhaps not recognizable as such, held not benign), *with Gelinas v. Retrieval-Masters Creditors Bureau, Inc.*, No. 15-CV-116-JTC, 2015 WL 4639949, at \*4 (W.D.N.Y. July 22, 2015) ("This court is not bound by the *Douglass* decision and declines to follow it. Having reviewed the envelopes in question, it cannot be said that the visibility of a series of letters and numbers above the recipient's name is capable of identifying that person as a debtor."), *and Perez v. Glob. Credit & Collection, Corp.*, No. 14 Civ. 9413 (CM), 2015 WL 4557064, at \*3 (S.D.N.Y. July 27, 2015) ("[T]his Court finds that plaintiff's account number—a string of eight meaningless digits—falls comfortably within the 'benign language' exception to § 1692f(8).").  Reasonable minds may differ as to whether markings on an envelope are benign, but there can be little disagreement as to whether markings on an envelope are required to facilitate mail delivery.  Thus, the narrower reading of § 1692f(8) better promotes consistency in the enforcement of the FDCPA.

In sum, although it is *possible* to read § 1692f(8) to prohibit even those markings that would be necessary for mail delivery—which would be absurd given that the statute plainly endorses debt collectors' use of the mail to communicate with consumers—the statutory text by no means *compels* such a reading.  Because there is a reasonable interpretation of the statute that avoids this result while staying true to the FDCPA's broader purposes, the absurd-results

doctrine does not provide a basis for reading a "benign language" exception into § 1692f(8) where Congress did not write one in itself. *See Preston*, 948 F.3d at 782.

**B.  Section 1692f(8) Is Unambiguous.**

Although a "benign language" exception could nevertheless be warranted if § 1692f(8) were ambiguous—i.e., "subject to more than one reasonable interpretation," *N. Fork Coal Corp. v. Fed. Mine Safety & Health Rev. Comm'n*, 691 F.3d 735, 740 (6th Cir. 2012); *see also Goswami*, 377 F.3d at 493—that is not the case here.  "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."  *Roth v. Guzman*, 650 F.3d 603, 614 (6th Cir. 2011) (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341 (1997)).  The traditional canons of statutory interpretation are useful in determining whether the statutory text is susceptible to more than one reasonable interpretation.  *See United States v. Miller*, 734 F.3d 530, 541 (6th Cir. 2013); *OfficeMax, Inc. v. United States*, 428 F.3d 583, 592 (6th Cir. 2005) ("[T]he question whether a statute is ambiguous arises after, not before, a court applies traditional canons of interpretation.").

For § 1692f(8) to be ambiguous, then, there must be at least one reasonable reading of the provision in addition to the one identified by the Seventh Circuit in *Preston*.  The above absurdity analysis allows a quick dismissal of one such candidate.  Although it is possible to read § 1692f(8)'s blanket prohibition as forbidding debt collectors from including even the consumer's address and postage on an envelope, such an interpretation would be unreasonable because it would contravene the statute's express endorsement of debt collectors' use of the mail to communicate with consumers.  Because only reasonable interpretations can serve as a basis for concluding that a statute is ambiguous, *N. Fork Coal Corp.*, 691 F.3d at 740, this interpretation fails to establish ambiguity.

Accordingly, some other reasonable interpretation of § 1692f(8) must be available for the provision properly to be deemed ambiguous.  In *Goswami*, the Fifth Circuit purported to locate such an interpretation.  After concluding that § 1692f(8) was indeed subject to a reading in line with the one later ascribed to it by the Seventh Circuit, the Fifth Circuit determined that the

statute was nevertheless susceptible to another reading, when read in concert with the section's preface:

> If, on the other hand, we read § 1692f(8) together with the opening paragraph or preface of § 1692f, then the provision takes on another reasonable meaning. Section 1692f begins by establishing its objective as prohibiting unfair and unconscionable conduct by debt collectors. The section then lists specific unfair or unconscionable conduct that is prohibited. Under this reading of the statute, subsection eight only prohibits markings on the outside of envelopes that are unfair or unconscionable, such as markings that would signal that it is a debt collection letter and tend to humiliate, threaten, or manipulate debtors.

*Goswami*, 377 F.3d at 493. This was the extent of the Fifth Circuit's analysis on the question of whether § 1692f(8) is ambiguous. Respectfully, we do not think that the Fifth Circuit's proffered interpretation is reasonable, and therefore we conclude that it cannot serve as a basis for holding that § 1692f(8) is ambiguous.

A thorough analysis of § 1692f(8) reveals at least three features that support our conclusion that the Fifth Circuit's proffered alternative interpretation of the statute is unreasonable:

First, "[o]ne of the most basic canons of statutory interpretation is that a more specific provision takes precedence over a more general one." *United States v. Perry*, 360 F.3d 519, 535 (6th Cir. 2004). The Fifth's Circuit's proffered interpretation would reverse that rule. Section 1692f does generally prohibit "unfair or unconscionable means to collect or attempt to collect any debt," but it proceeds to list specific provisions that proscribe debt collectors' conduct, including § 1692f(8). Under ordinary rules of statutory construction, these specific provisions control over the more general language that precedes them. In the absence of a clear indication from Congress that it intended for the general preamble to influence the plain meaning of the specific provisions, this canon demonstrates the unreasonableness of the Fifth Circuit's interpretation.

Second, the Fifth Circuit's interpretation of § 1692f(8) violates the canon against surplusage. That canon reflects "the idea that 'every word and every provision is to be given effect [and that n]one should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence.'" *Nielsen v. Preap*, 139 S. Ct. 954, 969 (2019)

(alteration in original) (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012)). Reading § 1692f(8) to prohibit the use of only those markings that indicate that a piece of mail is a debt-collection letter (or are otherwise unfair or unconscionable) renders inconsequential § 1692f(8)'s express exception for business names that do not "indicate that [the sender] is in the debt collection business." Even without that exception, debt collectors would be free to use their names on an envelope if that name did not indicate that they were a debt collector because—by definition—doing so would not indicate that the correspondence was a debt-collection letter (and it would not otherwise be unfair or unconscionable). In other words, under the Fifth Circuit's reading of § 1692f(8), the business name exception is surplusage because removing it would have no effect on the provision's scope. Thus, the canon against surplusage further supports the conclusion that the Fifth Circuit's proffered interpretation is unreasonable.

Third, the Fifth Circuit's interpretation runs contrary to the presumption that Congress's "choice in statutory structure was intentional." *N. Fork Coal Corp.*, 691 F.3d at 743. Congress structured § 1692f(8) as a bright-line rule—a blanket prohibition on "any language or symbol." Yet the Fifth Circuit's proffered interpretation would invert this structural choice by turning the bright-line rule into a more circumstantial and flexible inquiry into whether the language or symbol in question could be considered unfair or unconscionable. As Donovan argues, reading the provision in this fashion "flips § 1692f(8) on its head by changing it from a statutory section that *prohibits* nearly all markings to one that *permits* nearly all markings." Appellant Br. at 15. It would be unreasonable to read § 1692f(8) in this fashion in light of Congress's structural choice in drafting the statute.

Although canons of construction are not "absolute," *Lockhart v. United States*, 136 S. Ct. 958, 963 (2016), they uniformly underscore the unreasonableness of the Fifth Circuit's proffered interpretation of § 1692f(8). In the absence of any other reasonable interpretation of § 1692f(8), we hold that the provision unambiguously prohibits the use of language or symbols on debt collectors' envelopes, excepting the following: (1) "language or symbols to ensure the successful delivery of the communication," *Preston*, 948 F.3d at 782; (2) "the debt collector's address"; and (3) the debt collector's "business name," if and only if "such name does not

indicate that [it] is in the debt collection business." 15 U.S.C. § 1692f(8). There is no exception for "benign language."

Applying this controlling interpretation of § 1692f(8)—which derives exclusively from the provision's plain text—to the allegations in Donovan's complaint is straightforward. FirstCredit sent Donovan a letter featuring a glassine window through which were visible two unmarked checkboxes followed by the text "Payment in full is enclosed" and "I need to discuss this further. My phone number is _____." Those symbols and that language played no role in ensuring the successful delivery of the letter, nor were they FirstCredit's address or an allowable business name. Accordingly, Donovan has plausibly alleged a violation of § 1692f(8), and the district court erred in granting FirstCredit's motion for judgment on the pleadings.

## IV. CONCLUSION

For the foregoing reasons we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion. Because the district court granted FirstCredit's motion for judgment on the pleadings as to Donovan's CSPA claim for failure to plead a violation of § 1692f(8), "our FDCPA analysis applies equally to her CSPA claim for remand purposes." *Cagayat*, 952 F.3d at 758.